UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ISRAEL HERNANDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 14-922 (RJL) |
| | ) | |
| CASEY B. STRINGER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION
(September 28, 2016) [Dkt. #28]

FILED
SEP 2 9 2016
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiff Israel Hernandez ("plaintiff") brings this action against Casey B. Stringer ("Stringer") and Broughton Construction Company, LLC ("Broughton") (together "defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the District of Columbia Minimum Wage Act ("DCMWA"), D.C. Code §§ 32-1001 *et seq.*, and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code §§ 32-1301 *et seq.* *See generally* Compl. [Dkt. #1]. Defendants answered plaintiff's Complaint on July 15, 2014 and raised a counterclaim of breach of contract against plaintiff. Defs.' Answer to Compl. and Counterclaim [Dkt. #5]. Presently before the Court is plaintiff's Motion for Partial Summary Judgment [Dkt. #28]. Upon consideration of the pleadings, the relevant law, and the entire record herein, the Court GRANTS IN PART and DENIES IN PART plaintiff's Motion.

## BACKGROUND

Broughton, which is owned by Stringer, does business as a general contractor and construction manager. Defs.' Opp'n to Pl.'s Mot. for Partial Summ. J. 2, 3 [hereinafter "Defs.' Opp'n"] [Dkt. #29]. Broughton does business in Maryland and Washington, D.C. Pl.'s Statement of Undisputed Facts ¶ 8 [hereinafter "Pl.'s SOMF"] [Dkt. #28-1]. Plaintiff worked for defendants from approximately February 1, 2010 to February 27, 2014. Pl.'s SOMF ¶ 1. Defendants paid plaintiff a set salary, as opposed to paying him by the hour. Pl.'s SOMF ¶ 1. Plaintiff claims that at times during his employment with defendants he worked more than forty hours a week. Pl.'s SOMF ¶ 2. He points to defendants' own records, which indicate that he worked more than forty hours in at least thirty-three different work weeks while he was employed by defendants. Pl.'s SOMF ¶ 3 (citing Broughton's Supplemented Answers to Hernandez's First Interrogatories at 18–24 [Dkt. #28-3]). However, plaintiff alleges that Broughton "has highly altered these time records to reduce the number of hours that Plaintiff reported." Pl.'s SOMF 2 n.2. Defendants maintain that plaintiff repeatedly falsely reported being at work when he was not actually present and that this was one of the reasons that defendants ultimately terminated his employment. Defs.' Opp'n 9. While employed with defendants, plaintiff was not paid time and a half for any hours he worked over forty hours per week. Pl.'s SOMF ¶ 4.

Although the parties agree that plaintiff's title was "Assistant Superintendent," Pl.'s SOMF ¶ 23; Defs.' Opp'n 3, they dispute the nature of his duties. Defendants claim that plaintiff was a worksite manager who supervised the work of and managed subcontractors. Defs.' Opp'n 9. These subcontractors were not Broughton employees. Defs.' Opp'n 2, 4.

Plaintiff denies being a manager or supervisor and asserts that he was a carpenter. Pl.'s SOMF ¶ 27. At the close of plaintiff's employment with Broughton in February 2014, the company's human resources manager Tamla Kirkland presented him with an Employment Separation and Release Agreement ("the Agreement"). Defs.' Opp'n 30. The Agreement contained a provision releasing *all* legal claims against Broughton. Agreement ¶ 2 [Dkt. #28-9] ("I am releasing and giving up claims I now know and those I may not know about. This includes all obligations, claims, or causes of action of any kind, whether by tort, by contract or statute, or on any other basis . . . ."). The Agreement went on to state that the waiver:

> [includes] but is not limited to claims related to alleged discrimination on the basis of age, color, race, gender, sexual orientation, religion, national origin, handicap or disability, veteran status, marital status or any other basis, and includes claims arising under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, Section 1981 of the Civil Rights Act of 1866, the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Fair Labor Standards Act, as amended, the Family and Medical Leave Act, as amended, the Americans with Disabilities Act of 1990, as amended, the Equal Pay Act, the Rehabilitation Act of 1973, as amended, the WARN Act, Executive Order 1246 and claims under any other federal law, and any state or local law.

Agreement ¶ 2. Moreover, the Agreement provided that no lawsuit would be filed asserting any released claim and that, if such a lawsuit was filed, plaintiff would owe Broughton for its attorneys' fees and costs. Agreement ¶ 3. In exchange for signing the Agreement, plaintiff was offered a continuation of his wages from the date of his termination—February 26, 2014—through February 28, 2014. Agreement ¶ 1. Without consulting with an attorney, plaintiff signed the Agreement on the spot. Pl.'s SOMF ¶¶ 36, 39.

Plaintiff filed his Complaint on May 30, 2014. On July 15, 2014, defendants filed their answer and counterclaim alleging that plaintiff had breached the Agreement. On August 4, 2014, plaintiff moved to dismiss the counterclaim, but I denied that request on January 27, 2015. On November 27, 2015, plaintiff filed the instant Motion for Partial Summary Judgment, requesting that the Court find in his favor on the following issues: (1) that defendants violated the FLSA and DCMWA by failing to pay plaintiff time and a half his "regular rate" for the hours he worked over forty in each week; (2) that plaintiff has not waived his right to receive overtime pay and wages under the FLSA, DCMWA, and the DCWPCL (3) that defendants' counterclaim for defendants' attorney fees is invalid and void; (4) that defendants have waived their right to raise any exemption defenses; (5) that Broughton is an enterprise subject to the FLSA, that Casey B. Stringer was at all times plaintiff's employer under the FLSA, DCMWA, and DCWPCL, and, as such, both parties are jointly and severally liable to plaintiff; (6) that plaintiff is entitled to recover liquidated damages under the FLSA and DCMWA; and (7) that defendants' counterclaim must be dismissed for lack of subject matter jurisdiction. Pl.'s Mot. for Partial Summ. J. 1–2 [Dkt. #28].

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the nonmoving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted). In determining whether there is a genuine dispute about material facts, the court "must view the evidence in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in favor of the nonmoving party." *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23-24 (D.C. Cir. 2013) (quotation marks and citation omitted). Moreover, "[t]he court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Local Rule 7(h)(1). Pursuant to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim of defense—or the part of each claim or defense—on which summary judgment is sought." Thus, even where summary judgment on a claim is not warranted, it is within the court's discretion to "identify[] the facts that no longer may be disputed" in order to "narrow[] the scope of the trial" and to "materially expedite the adjudication." 10B Wright & Miller, *Federal Practice and Procedure* § 2737 (4th ed.).

## DISCUSSION

### I. Applicability of the Executive Exemption

Employers who are covered by the FLSA are required to pay an employee one and a half times their "regular rate" for work that exceeds forty hours per week,[1] unless the employee is subject to certain exemptions as set forth in the statute. 29 U.S.C. §§ 207(a), 213. One of those exemptions is for employees "employed in a bona fide executive, administrative, or professional capacity." *Id.* § 213(a). The exemptions serve as "affirmative defense[s] on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974). Exemptions from the FLSA "are to be narrowly construed against the employers seeking to assert them." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). The Department of Labor "has promulgated detailed regulations outlining the criteria for the application of the FLSA exemptions." *McKinney v. United Stor-All Centers LLC*, 656 F. Supp. 2d 114, 121 (D.D.C. 2009) (citing 29 C.F.R. §§ 541.100 *et. seq.*). These regulations "are entitled to judicial deference and are the primary source of guidance for determining the scope of exemptions to the FLSA." *Id.* (quoting *Clements v. Serco, Inc.*, 530 F.3d 1224, 1227 (10th Cir. 2008)). Defendants here argue that any failure to pay plaintiff overtime wages was not in violation of the FLSA

---

[1] It is undisputed here that Broughton is an entity subject to the FLSA, DCMWA, and DCWPCL. Moreover, defendants' opposition did not address plaintiff's argument that both Broughton and Stringer were his "employers" under those acts. The Court therefore deems the argument conceded. *See Shaw v. District of Columbia*, 824 F. Supp. 2d 173, 177 (D.D.C. 2011) ("It is well-established in this Circuit that when a [non-moving party] files an opposition to a dispositive motion and addresses only certain arguments raised by the [moving party], the court may treat those arguments that the [non-moving party] failed to address as conceded." (internal quotation marks omitted)).

or the DCMWA[2] because plaintiff was an exempt executive employee. Defs.' Opp'n 10–15. Plaintiff asserts that defendants waived their exemption defense by not sufficiently raising it in their Answer and that, regardless, plaintiff did not fall within the executive exemption because he never supervised two or more Broughton employees. Pl.'s Mem. 11–12. Because I agree with plaintiff that the executive exemption is inapplicable here, I need not and do not address his waiver argument.

Defendants do not claim that plaintiff supervised two or more Broughton employees and instead assert that he supervised two or more subcontractors working on Broughton projects. Defs.' Opp'n 11, 13–14; *see also* Def.'s Opp'n to Pl.'s Mot. to Compel Disc. 1 [Dkt. #25] ("Broughton does not claim that Mr. Hernandez customarily and regularly directed the work of two or more of its own full-time employees."). The Department of Labor regulations define an "executive" employee as one who, *inter alia*, "customarily and regularly directs the work of two or more other employees." 29 C.F.R. § 541.100(a) (setting forth a conjunctive list of criteria for the executive exemption). The Department has explained "[t]he phrase 'two or more other employees' means two full-time employees or their equivalent." *Id.* § 541.104(a). "One full-time and two half-time employees, for example, are equivalent to two full-time employees. Four half-time employees are also equivalent." *Id.* Without citing any authority beyond the regulation itself, defendants

---

[2] The DCMWA's overtime requirement mirrors that of the FLSA. D.C. Code § 32-1003(c). It also provides for the same executive exemption, specifically referencing the FLSA. *Id.* § 32-1003(a)(1). The parties agree that FLSA standards govern the applicability of the executive exemption to plaintiff's DCMWA claim. Pl.'s Mem. 4 n.4; Defs.' Opp'n 10 n.49. *See also Thompson v. Linda And A., Inc.*, 779 F. Supp. 2d 139, 146 (D.D.C. 2011) (explaining that "[w]ith respect to employers' liability, [the DCMWA and DCWPCL] are construed consistently with the FLSA"). The Court will therefore address plaintiff's FLSA and DCMWA claims together.

7

argue that the subcontractors at issue here are the equivalent of full-time employees. Defs.' Opp'n 14. But "[t]he examples provided in the [regulation] indicate that the word 'equivalent' pertains to the amount of time an employee works . . . not to the status of the worker." *Wilks v. District of Columbia*, 721 F. Supp. 1383, 1384 (D.D.C. 1989). As the Department of Labor has made clear, the executive exemption applies only to those who regularly supervise two or more *fellow employees*, not contractors or subcontractors. *See* U.S. Dep't of Labor Op. Letter FLSA2007-3, 2007 WL 506576, at *2 (Jan. 25, 2007) ("Only other employees employed by the same employer may be considered when making this determination under the executive exemption; the supervision of employees of independent contractors, subcontractors, or any other 'non-employees' in relation to the employer are not considered for purposes of meeting this test."); U.S. Dep't of Labor, *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22,122, 22,135 (Apr. 23, 2004) (rejecting an interpretation of the executive exemption that would "count the supervision of volunteers, contractors, and other non-employees" because the "FLSA itself defines the term 'employee' as an 'individual employed by an employer'").[3] Therefore, plaintiff was not an exempt employee pursuant to the FLSA's or the DCMWA's executive exemption.

---

[3] *See also Calli v. ARC Maint., Inc.*, No. 5:14-CV-5292, 2016 WL 245323, at *6 (E.D. Pa. Jan. 21, 2016); *Haley v. Kundu*, No. 1:11-CV-265, 2013 WL 1984363, at *3 (E.D. Tenn. May 13, 2013); *Villegas v. Dependable Constr. Servs.*, No. 4:07–cv–2165, 2008 WL 5137321 (S.D. Tex. Dec. 8, 2008); *Bagwell v. Florida Broadband, LLC*, 385 F. Supp. 2d 1316, 1329 (S.D. Fla. 2005); *Murphy v. Commonwealth Edison Co.*, No. 01 C 1741, 2002 WL 832608, at *3 (N.D. Ill. May 1, 2002).

## II. FLSA and DCMWA Liability and Damages

Plaintiff asks the Court to rule now that defendants are liable for violations of the FLSA and DCMWA. But it is well-established that the employee "has the burden of proving that he performed work for which he was not properly compensated." *Arias v. U.S. Serv,. Indus., Inc.*, 80 F. 3d. 509, 511 (D.C. Cir. 1996) (internal quotations omitted). At this juncture, plaintiff has not set forth sufficient evidence as to the number of overtime hours he worked without time and a half pay. Although plaintiff submits his timesheets from Broughton that purport that plaintiff worked more than forty hours a week during thirty-three weeks that he was employed by defendants, he argues that those records have been highly altered and do not reflect the full extent of his overtime hours. Pl.'s Mem. 2 n.3. Defendants here do not contest that plaintiff at times worked more than forty hours a week. *Compare* Pl.'s SOMF ¶ 2 *with* Defs.' Opp'n 2–10. Defendants also argue that plaintiff's timesheets are inaccurate, but in their view the errors derive from plaintiff over-reporting his time. Defs.' Opp'n 21 (citing Tamla Kirkland Aff. § 22 [Dkt. 29-1]). Assuming *arguendo* that the timesheets Broughton maintained regarding plaintiff are inaccurate, plaintiff's burden to set forth a prima facie case of FLSA and DCMWA liability would include "produc[ing] sufficient evidence to show the amount and extent of [the work for which he was improperly compensated] as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (emphasis added).[4] If he

---

[4] The *Anderson* standard also applies to claims under the DCMWA. *Serrano v. Chicken-Out Inc.*, Civ. No. 15-0276, 2016 WL 3962800, at *4 (D.D.C. July 22, 2016) (citing *Pleitez v. Carney*, 594 F. Supp. 2d 47, 49 (D.D.C. 2009)).

were to do so, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

Without a showing by plaintiff as to how many hours he actually worked, "the Court can draw no 'just and reasonable inference' about how often . . . and to what extent [plaintiff] worked in excess of forty hours per week," and, therefore, "summary judgment on the issue of [FLSA and DCMWA] liability would be inappropriate." *Guevara v. Ischia, Inc.*, 47 F. Supp. 3d 23, 28 (D.D.C. 2014). Moreover, the Court cannot make credibility determinations regarding the parties' respective evidence on a motion for summary judgment, and for that reason the issue of the number of hours of work plaintiff actually performed may ultimately be one for a jury. Because liability has not yet been established, consideration of plaintiff's claim that he is entitled to liquidated damages would be premature, and the Court will reserve judgment on that issue. *See id.* at 28–29.

### III. Defendants' Counterclaim

Defendants raise a breach of contract counterclaim against plaintiff, stating that his filing of this lawsuit violates the Agreement and that he has released the claims he pursues here. *See* Defs.' Opp'n 22–23. They further argue that plaintiff owes them costs and attorneys' fees incurred in defending against plaintiff's claims under the Agreement's indemnity clause. *See* Defs.' Opp'n 22–23. Plaintiff moves for summary judgment on the counterclaim, arguing that the Agreement is invalid. Pl.'s Mem. 4–11. Despite defendants'

assertions that "consenting adults" should be free to "'close the books' on their business relationship," Defs.' Opp'n 20, the "typical tenants of contract law do not apply to FLSA settlements." *Sarceno v. Choi*, 66 F. Supp. 3d 157, 167 (D.D.C. 2014). As the Supreme Court has recognized, Congress's purpose in enacting the FLSA was "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Thus, "to allow waiver of statutory wages by agreement would nullify the purposes of the Act." *Id.* at 707; *see also Beard v. D.C. Hous. Auth.*, 584 F. Supp. 2d 139, 143 (D.D.C. 2008) ("It is a long-held view that FLSA rights cannot be abridged or otherwise waived by contract because such private settlements would allow parties to circumvent the purposes of the statute by agreeing on sub-minimum wages."). When a court is faced with an agreement purporting to release FLSA claims, it must therefore question "whether [the] release was given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the Act or whether it constituted a mere waiver of his right to liquidated damages." *Id.* at 703. A settlement resolves a bona fide FLSA dispute if it "reflects a reasonable compromise over issues that are actually in dispute, since merely waiving a right to wages owed is disallowed."[5] *Sarceno v. Choi*, 78 F. Supp. 3d 446, 450 (D.D.C. 2015).

---

[5] Defendants rely on 29 U.S.C. § 253 as authorization for private settlement of wage claims. By its own terms that provision applies only to claims that "accrued prior to May 14, 1947," the date of the FLSA's enactment.

The release provision of the Agreement between plaintiff and Broughton is unenforceable as to plaintiff's FLSA claim. Defendants do not even argue, much less provide evidence, that at the time the parties executed the Agreement they were settling a dispute between them regarding wages owed to plaintiff under the FLSA. Indeed, defendants do not argue or point to any evidence that there was any communication between the parties whatsoever of the applicability of the FLSA's overtime requirements to plaintiff or of the number of hours he worked but was not compensated for in accordance with the FLSA before they entered into the Agreement. Instead, it is uncontroverted that the Agreement was a standard separation agreement generally issued to employees who, like plaintiff, were involuntarily terminated from Broughton. Kirkland Dep. 128:15–18; 129:2–4 [Dkt. #28-4]. Moreover, Kirkland testified that she and plaintiff never specifically discussed the FLSA's coverage or plaintiff's right, if any, to receive overtime compensation pursuant to the FLSA prior to plaintiff signing the Agreement. Kirkland Dep. 131:16–22. True, the Agreement provided plaintiff with an additional couple days' salary. However, defendants have set forth no evidence that the payment derived from negotiations between the parties as to the amount actually owed to plaintiff under the FLSA or had any relation whatsoever to such an amount. *But see* Kirkland Dep. 133:10 (stating that she did not consult records regarding plaintiff's hours of overtime work in determining the amount Broughton would pay plaintiff pursuant to the Agreement). Because the Agreement "was [not] given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the" FLSA and because it was instead precisely

the sort of "mere waiver" of FLSA rights that is clearly prohibited, the Agreement does not serve as a bar to plaintiff's present FLSA claim.[6] *O'Neil*, 324 U.S. at 707.

Similarly, the DCMWA and DCWPCL provide that the obligations and rights they impose cannot be contracted around by employers and employees. *See* D.C. Code § 32-1305(a) (DCWPCL stating that "[e]xcept as herein provided, no provision of this chapter will in any way be contravened or set aside by private agreement"); D.C. Code § 32-1012(d) (DCMWA providing that "[a]ny agreement between an employer and employee in which the employee agrees to work for less than the wages to which the employee is entitled under this subchapter or any regulation issued under this subchapter shall be no defense to any action to recover unpaid wages or liquidated damages."). In other words, DCMWA and DCWPCL rights and claims cannot be waived. If plaintiff demonstrates that under the DCMWA or the DCWPCL he is owed more wages than he received as a result of the Agreement, the release provision cannot be enforced as to the relevant local law claims and cannot serve as the basis of a defense or counterclaim for defendants.

Turning to the Agreement's indemnity clause, defendants concede that "whether the clause is triggered or not is [] inextricably bound up with the question of whether the release is valid. If the release is valid and [plaintiff] released the claims he is now asserting, then the clause comes into play; if the release is invalid, then it does not." Defs.' Opp'n 22. My

---

[6] Because the Court finds the Agreement was not a settlement of a bona fide dispute, it need not analyze the Agreement for indicia of fairness and reasonableness. *See Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 128 (D.D.C. 2014) (describing a finding of a bona fide dispute as a "requisite" to the evaluation of "the validity of an FLSA settlement").

holding that the Agreement is invalid as to plaintiff's FLSA claim, therefore necessitates a holding that it is likewise invalid as to plaintiff's obligation to indemnify defendants for costs and attorney's fees incurred in litigating the FLSA claim. Because the Court cannot determine at this juncture the enforceability of the release provision as to the DCMWA or DCWPCL claims, see discussion of DCMWA and DCWPCL *supra*, it withholds judgment of the indemnity clause's enforceability as to those claims.

Finally, defendants' counterclaim asserts that plaintiff breached the Agreement by "fail[ing] to return various items of Broughton's property, including (without limitation) keys and tools." Defs.' Answer and Counterclaim ¶ 16 [Dkt. #5]. Plaintiff argues the Court lacks jurisdiction to adjudicate this portion of the defendants' counterclaim. Pl.'s Mem. 19. Although defendants fail to cite any legal authority in response, their argument is, in essence, that the Court has supplemental jurisdiction over their counterclaim to the extent it alleges that plaintiff breached the release and indemnity clauses pursuant to 28 U.S.C. § 1367(a), which provides for supplemental jurisdiction over claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). I agree. Unfortunately for defendants, however, their response does not address plaintiff's objection to supplemental jurisdiction over the counterclaim's allegation that plaintiff *did not return Broughton's property* in breach of the Agreement. I therefore deem any argument that the Court should exercise Section 1367(a) supplemental jurisdiction over defendants' claim that plaintiff failed to return Broughton's property in breach of the Agreement waived and will decline to exercise supplemental jurisdiction over that portion of the counterclaim. *See Doe by Fein v. District*

14

*of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996) (arguments related to "[t]he discretionary aspect to supplemental jurisdiction [are] waivable"). My conclusion is bolstered by the fact that "courts have been hesitant to permit an employer to file counterclaims in FLSA suits for money the employer claims the employee owes it, or for damages the employee's tortious conduct allegedly caused." *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010); *see also Slaughter v. Alpha Drugs, LLC*, 907 F. Supp. 2d 50, 54 (D.D.C. 2012) ("[T]he Court is cognizant of the fact adjudicating counterclaims filed by an employer in the same context as a suit seeking unpaid wages may be inconsistent with the purpose of the FLSA.").

## CONCLUSION

For all the foregoing reasons, the Court GRANTS IN PART plaintiff's Motion for Partial Summary Judgment in that the following issues are deemed established: (1) both Broughton and Stringer were plaintiff's "employers" under the FLSA, the DCMWA, and the DCWPCL; (2) plaintiff was not an exempt employee pursuant to the FLSA's or the DCMWA's executive exemption; (3) the Agreement's release provision is unenforceable as to plaintiff's FLSA claim; (4) the Agreement's indemnity clause is unenforceable as to plaintiff's FLSA claim; (5) any argument that the Court should exercise supplemental jurisdiction over the allegation contained in paragraph 16 of defendants' counterclaim is waived. The Court DENIES IN PART plaintiff's Motion for Partial Summary Judgment,

without prejudice, as to the remaining issues. An Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge